RECEIVED
IN LAKE CHARLES

JAN 13 2010

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DP CONCRETE PRODUCTS, LLC | : | DOCKET NO. 2:08 CV 571 |
| VS. | : | JUDGE MINALDI |
| AMERICAN SPRING WIRE CORP. | : | MAGISTRATE JUDGE HANNA |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by plaintiff DP Concrete Products, L.L.C. ("DP") [doc. 55]. The defendant, American Spring Wire Corp. ("ASW"), filed an Opposition [doc. 63]. DP filed a Reply [doc. 65]. Also before the Court is a Motion for Summary Judgment, filed by ASW [doc. 57]. DP filed an Opposition, and ASW filed a Reply [docs. 64, 66].

### FACTS

DP is a Louisiana-based company that manufactures pre-stressed concrete pilings for construction projects using materials supplied by other companies.[1] ASW is a company located in Ohio that manufactures various types of wire products, including pre-stressed concrete strand.[2] Prior to this lawsuit, the parties had an established history of business transactions.[3] The parties' typical course of dealing was as follows: DP requested a price quote from ASW by phone or email and

---

[1] Complaint [doc. 1].

[2] Def.'s Ex. A (Napoli Aff.) [doc. 57-3].

[3] Complaint [doc. 1].

ASW submitted a quote. If DP decided to use ASW as its strand supplier, DP issued a field purchase order and then a release order to ASW. ASW transmitted a written sales acknowledgment to DP, confirming the order and stating the terms and conditions, and then ASW shipped the strand and corresponding documents to DP. Finally, ASW sent DP a written invoice, and DP paid ASW pursuant to the invoice.[4]

In 2006, Motiva Enterprises, L.L.C. undertook an oil refinery expansion project in Port Arthur, Texas ("the Motiva Project") and hired Bechtel/Jacobs Joint Venture ("Bechtel/Jacobs") to manage the incoming bids and to act as the project's general contractor.[5] In January 2007, Bechtel/Jacobs invited DP to submit a bid to perform the concrete piling work for the Motiva Project.[6]

To formulate its bid for the Motiva Project, DP solicited price quotes from strand suppliers, including ASW.[7] DP's Chief Operating Officer, Jeremy Adkins ("Adkins"), contacted ASW by telephone, explaining the bid requirements and inviting ASW to submit a quote that could potentially be used in DP's bid to Bechtel/Jacobs.[8] Adkins spoke to sales representative Terri Ramey ("Ramey") in ASW's Houston, Texas office, who responded to Adkins' inquiries with two emails, each titled "Quote for Motiva Project."[9] Both emails from Ramey quoted a price of $220 per 1,000

---

[4] Def.'s Ex. C (Adkins/Singletary Dep.) [docs. 57-12, 57-13, 57-14].

[5] Pl.'s Ex. A (Adkins Decl.) [doc. 55-4].

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id*; Pl.'s Exs. F, G [doc. 55-4].

2

feet ($0.22 per linear foot) of strand delivered and stated "[p]rice to be held through the duration of project."[10] Ramey later explained that "duration of the project" meant that the price would be held for 9.5 months, based on Adkins' statement that the project's duration would be 9.5 months.[11]

In mid-February 2007, DP incorporated ASW's quote into its bid to Bechtel/Jacobs, and in early April 2007, DP learned that it had been awarded a portion of the Motiva Project piling work.[12] On April 13, 2007, Adkins emailed Ramey and confirmed ASW's price quotation at $0.22 per linear foot for the "duration of job with no price escalation," and he stated DP's anticipated start date was May 2007 with an anticipated finish "sometime in 2008."[13]

On April 26, 2007, Ramey traveled to Louisiana and personally received DP's purchase order, which indicated that ASW would provide 25-30 million linear feet of strand at a price of $0.22 per linear foot.[14] In May 2007, ASW began shipping wire from its Houston, Texas office to DP's Louisiana plant.[15] With every strand shipment, ASW transmitted a sales acknowledgment email to DP, confirming the order and stating that ASW's terms and conditions applied to the order.[16] ASW also included its terms and conditions on the invoices sent to DP with each strand shipment.[17] DP

---

[10] *Id.*

[11] Def.'s Ex. E (Ramey Dep.) [doc. 63-14].

[12] Pl.'s Ex. A (Adkins Decl.) [doc. 55-4]; Price's Sec. Aff. [doc. 55-3].

[13] Pl.'s Ex. J [doc. 55-4]; Pl.'s Ex. A (Adkins Decl.) [doc. 55-4].

[14] Pls' Ex. K [doc. 55-4]; Pl.'s Ex. A (Adkins Decl.) [doc. 55-4].

[15] Def.'s Ex. A (Napoli Aff) [doc. 57-3].

[16] *Id.*

[17] *Id.* The invoices are attached as Def.'s Ex. A-2 [docs. 57-5, 57-6, 57-7]. *See also* Def.'s Ex. C (Adkins/Singletary Dep.) [doc. 57-12].

incorporated the wire received from ASW into the concrete pilings it manufactured for the Motiva Project.[18]

On January 8, 2008, ASW's general manager, Joe Napoli ("Napoli"), advised DP that ASW would unilaterally increase its prices effective January 21, 2008.[19] Adkins responded on January 18, 2008, objecting to the price increase because it violated the terms set forth in the purchase order.[20] On January 18, 2008, Napoli sent Adkins an email stating that ASW "might not be able to live up to [its] commitments" to DP due in part to its inability to negotiate with its rod source.[21] Napoli also stated that the extension of the original nine month project schedule had caused ASW to incur unforseen expenses, and that "by no means was this project ever projected to go well into 2008."[22]

Napoli confirmed ASW's price increase in correspondence sent on January 22, 2008 and January 28, 2008, again explaining that the increase was based on ASW's increasing costs.[23] DP responded on January 30, 2008, stating that it fully expected ASW to fulfill the purchase order at the contracted price for the duration of the project.[24] DP contacted Bechtel/Jacobs regarding ASW's situation, but Bechtel/Jacobs refused DP's request for a price accommodation.[25]

---

[18] Pl.'s Ex. A (Adkins Decl.) [doc. 55-4].

[19] Pl.'s Ex. N [doc. 55-4].

[20] Pl.'s Ex. O [doc. 55-4].

[21] Pl.'s Ex. P [doc. 55-4].

[22] *Id.*

[23] Pl.'s Exs. Q, R [doc. 55-4].

[24] Pl.'s Ex. S [doc. 55-4].

[25] Pl.'s Ex. A (Adkins Decl.) [doc. 55-4].

ASW raised its prices on the March 3, 2008 invoice to DP, after selling 12.6 million linear feet of the 25-30 million linear feet agreed upon by the parties. DP then purchased steel wire on the open market at an increased cost of $1,937,497.77.[26]

DP filed suit, alleging that ASW breached the parties' contract by unilaterally raising the $0.22 per linear foot strand price and refusing to supply DP with the remainder of the purchased wire for that price despite demand.[27] In its counterclaim, ASW alleges that DP's failure to complete the Motiva Project within the time frame originally promised and agreed to by DP constitutes a breach.[28] Additionally, ASW claims that DP's failure to pay for strand that it received and used for the Motiva Project also constitutes a breach.[29] Finally, ASW also alleges claims of detrimental reliance, unjust enrichment, action on open account, negligent misrepresentation, and anticipatory repudiation.[30]

DP has not paid for a significant portion of the strand it has received from ASW, and the outstanding balance is $478,858.17 plus interest.[31] DP acknowledges the strand it received conformed to the contract requirements and that none of it was defective.[32]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the

---

[26] Pl.'s Ex. EE [doc. 55-7].

[27] Complaint [doc. 1].

[28] First Amended Counterclaim [doc. 42].

[29] *Id.*

[30] *Id.*

[31] Def.'s Ex. B (Price Dep.) [doc. 57-11]; Def.'s Ex. A (Napoli Aff.) [doc. 57-3].

[32] Def.'s Ex. B (Price Dep.) [doc. 57-11].

opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

## ANALYSIS

### Choice of Law

DP argues that Louisiana law applies to this case, insisting that ASW's personal acceptance of the purchase order in Louisiana supports the application of Louisiana law. DP insists that Louisiana policies would be most severely impaired if its laws were not applied and argues that no other state has a greater interest in the matter because this dispute involves a contract effected in

6

Louisiana to provide materials to a Louisiana business. ASW maintains that Ohio law applies to this dispute because of the choice of law provision contained within ASW's standard terms and conditions.

Louisiana rules control the choice of law analysis in a diversity action sitting in Louisiana. *Thomas v. Fidelity Brokerage Services, Inc.*, 977 F. Supp. 791 (W.D. La. 1997). *See also Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049 (5th Cir. 1982) (Louisiana choice of law rules apply to a diversity action). Louisiana courts allow parties to stipulate in their contract which state's law will govern the contract. *Delhomme*, 669 F.2d at 1057. Louisiana Civil Code art. 3450 provides that contracts are governed by the law expressly chosen or relied upon by the parties, unless that law contradicts the public policy of the state whose law would otherwise apply. Between merchants, a choice of law provision is an additional term that becomes part of the contract unless: (1) it materially alters the offer; (2) the offer expressly limits acceptance to the terms of the offer; or (3) the offeror objects to the additional term within a reasonable time. *See* La. C.C. art. 2601; Ohio Revised Code Section 1302.10.

DP and ASW's contract contains the following choice of law provision, as set forth in ASW's standard terms and conditions: "This order shall be governed by and shall be construed by the law of the State of Ohio."[33] Louisiana law recognizes the enforceability of choice of law provisions in private parties' contracts. Further, Ohio has enacted the Uniform Commercial Code, recognized by almost all states and which DP has not shown to be contrary to the Louisiana's public policy.

Moreover, none of the three exceptions listed above applies to this situation. DP's offer did

---

[33] Def.'s Ex. 2 (Napoli Aff.) [doc. 57-3].

7

not expressly limit acceptance to the terms of the offer, and DP did not object to the additional term. Rather, DP received ASW's terms and conditions on more than 500 occasions throughout the parties' course of dealings, and never once objected to any of the terms, including the choice of law provision. Finally, the choice of law provision did not materially alter the offer. *See Coastal Industries, Inc. v. Automatic Steam Products Corp.*, 654 F.2d 375, 378 (5th Cir. 1981) (choice of law provision did not materially alter the nature of the obligation and was an additional term that became part of the parties' contract). The choice of law provision is part of DP and ASW's contract and is enforceable; therefore, Ohio law governs this dispute.

### DP's Motion for Summary Judgment

DP argues that summary judgment is appropriate because the parties' written contract was unambiguous, with a clear contractual term of 25 million linear feet, and ASW's refusal to sell that amount of strand at the agreed price entitles DP to damages. Additionally, DP contends that ASW bore the risk of an increase in steel prices, ASW is bound by the principles of detrimental reliance, and the fine print provisions allowing ASW to unilaterally raise its prices are ineffective to change the contract terms.

ASW insists that the contract language "sometime in 2008" is ambiguous and creates a genuine issue of material fact concerning the parties' intentions for the project's duration. ASW also argues that the doctrine of estoppel bars DP from binding ASW to the contract price indefinitely when ASW reasonably relied upon DP's representations that the project schedule was 9.5 months.

"The interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Group, Inc.*, 524 F.2d 754, 763 (6th Cir. 2008). However, if a contract term is deemed ambiguous,

then interpretation of the contract is a question for the trier of fact. *GenCorp, Inc. v. Amer. Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999). A contract term is ambiguous if "its meaning cannot be determined from the four corners of the agreement" or if "the language is susceptible of two or more reasonable interpretations." *Savedoff*, 524 F.3d at 763.

To demonstrate the contract was clear and unambiguous, DP attaches emails from ASW stating "price to be held through duration of the project" and the job has an "anticipated finish sometime in 2008."[34] Additionally, DP submits the purchase order sent to ASW, which had no temporal component but contained a contractual term of 25 million linear feet.[35]

DP has satisfied its burden for summary judgment; therefore, the burden shifts to ASW to demonstrate that there are specific facts presenting a genuine issue for trial. ASW attaches Ramey's deposition testimony to show a disputed issue regarding the parties' intention for the project duration. As evidenced by Ramey's testimony, ASW understood duration to correspond to the Motiva Project schedule, estimated to be 9.5 months.[36] Further, the contract language "duration of the project" and "sometime in 2008" are both susceptible to more than one reasonable interpretation. Accordingly, DP's motion for summary judgment is DENIED.

**ASW's Motion for Summary Judgment**

ASW requests summary judgment on its breach of contract counterclaim, insisting that DP's breach of the contract is undisputed. ASW supplied conforming goods to DP, who failed to pay for the goods after accepting and using them to manufacture a product for which it was paid. In addition

---

[34] Pl.'s Ex. BB [doc. 55-5].

[35] *Id.*

[36] Def.'s Ex. E (Ramey Dep.) [doc. 63-14].

9

to summary judgment, ASW insists that it is entitled to an award of interest and attorney's fees, as provided for in the parties' contract. DP argues that ASW breached the contract by failing to provide the concrete strand, and may not seek to enforce parts of the contract favorable to ASW.

A party who breached a contract may not enforce favorable parts of the contract. *See Nious v. Griffin Constr. Inc.*, 2004 WL 1752872 (Ohio App. 10 Dist. 2004) ("If a defendant fails to perform an essential or 'material' element of a contract, not only can it be liable for damages, but it also excuses the plaintiff from any further performance."); *Young v. Brookshire Village Properties*, 655 N.E.2d 1329, 1331 (1995) ("It is a settled principle of contract law that, in the case of mutually dependent promises, neither party is obligated to perform or is in default until the promise of the other party is performed or the other party tenders performance.")

There is a genuine of fact as to whether ASW breached the contract by failing to provide concrete strand for the duration of the project. Thus, there remains a genuine issue of material fact as to whether ASW may seek to enforce favorable parts of the contract, specifically that it be paid for the parts of strand provided to DP. Accordingly, ASW's motion for summary judgment is DENIED.

IT IS ORDERED that DP's motion for summary judgment, [doc. 55], is hereby DENIED.

IT IS FURTHER ORDERED that ASW's motion for summary judgment, [doc. 57], is hereby DENIED.

Lake Charles, Louisiana, this 13 day of January, 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE